Daniel P. Struck, Bar #012377
Timothy J. Bojanowski, Bar #022126
JONES, SKELTON & HOCHULI, P.L.C.
2901 North Central Avenue, Suite 800
Phoenix, Arizona  85012
Telephone:  (602) 263-7324
Fax:  (602) 200-7837
tbojanowski@jshfirm.com

Attorneys for Defendants Marc Antrim, Mike Ensch, Frank Luna,
Christopher Aguirre, and Corrections Corporation of America

### UNITED STATES DISTRICT COURT DISTRICT OF ALASKA AT ANCHORAGE

Earl Worthy, III,

                         Plaintiff,

        v.

MARC [SIC] ANTRIM, COMMISSIONER
DEPARTMENT OF CORRECTIONS, STATE
OF ALASKA,

REV. MIKE ENSCH, CHAPLAIN [SIC]
COORDINATOR, ALASKA CORRECTIONAL
MINISTRIES, DEPARTMENT OF
CORRECTIONS, STATE OF ALASKA,

FRANK LUNA, WARDEN & CEO, FLORENCE
CORRECTIONAL CNTR.,

CORRECTIONS CORPORATION OF
AMERICA,

CHAPLAIN AGUIRRE, CHAPLAIN, ALASKA
CONTRACT, FLORENCE CORRECTIONAL
CTR.,

                         Defendants.


Sued in their official and
individual capacities,

                         Defendants.

NO. 3:05-cv-00248 (TMB)

## <u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

Now come Defendants, Marc Antrim, Mike Ensch, Frank Luna, Chaplain Aguirre, and Corrections Corporation of America by and through counsel and hereby move for summary judgment against Plaintiff. There is no issue of fact for resolution by the jury, and Defendants are entitled to judgment as a matter of law.

A Memorandum in support of this Motion is attached hereto and incorporated herewith.

Respectfully submitted this 16th day of June 2006 at Phoenix, Arizona.

JONES, SKELTON & HOCHULI, P.L.C.


By s/Timothy J. Bojanowski
Daniel P. Struck
Timothy J. Bojanowski
2901 N. Central Avenue, Suite 800
Phoenix, Arizona 85012
(602) 263-7324

Michael D. Corey, Esq.
SANDBERG, WUESTENFELD &  COREY
ABA #8511130
701 West 8th Avenue, Suite 1100
Anchorage, Alaska 99501
(907) 276-6363

*Attorneys for Defendants Marc
Antrim, Mike Ensch, Frank Luna,
Chaplain Aguirre, and Corrections
Corporation of America*

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    PROCEDURAL POSTURE**

Plaintiff is a prisoner housed at the CCA Florence Correctional Center under a conviction from the State of Alaska. (Plaintiff's Complaint).

Plaintiff Earl Worthy, III ("Worthy") filed a Complaint seeking damages and injunctive relief in October 2005, naming State, individual, and corporate Defendants. Defendant Marc Antrim is the Commissioner for the Department of Corrections, State of Alaska. Defendant Reverend Mike Ensch is the Chaplaincy Coordinator, Alaska Correctional Ministries, for the Department of Corrections, State of Alaska. Defendant, Frank Luna was the Warden at Corrections Corporation of America ("CCA"), Florence Correctional Center ("FCC") in Florence Arizona at the times mentioned in Plaintiff's Complaint. Defendant, Chaplain Christopher Aguirre is the Chaplain at the CCA/FCC facility in Florence Arizona. Defendant Corrections Corporation of America is a corporation under contract with the State of Alaska to house Alaskan prisoners at the FCC facility. (Plaintiff's Complaint).

Worthy alleges a denial of free exercise of religion in violation of his First Amendment rights, and the Religious Land

Use and Institutionalized Persons Act of 2000 (RLUIPA), State Constitutional claims, and breach of contract. (Plaintiff's Complaint). Defendants have denied the claims by way of their Answer. Discovery has included the deposition of Plaintiff, and the production of documents.

## II. FACTS

Worthy is an inmate who was transferred from CCA's Central Arizona Detention Center ("CADC") to CCA's Florence Correctional facility in June of 2002. While housed at CADC, Worthy listed his religious preference as not religious or agnostic. (Worthy Deposition, Exhibit A). Worthy testified:

> Q.   What did you tell them when you were at CADC?
>
> A.   I'm not certain what I put down, just that I'm not religious.

(Worthy Deposition p. 25:19-22).

Worthy did not change his religious preference while at CADC. Thereafter, Worthy was transferred from CADC to FCC and his institutional file, including his religious preference designation, was transferred with him. (Affidavit of Chaplain Aguirre, Exhibit F).

When an inmate is transferred to FCC, his institutional file contains information regarding religious affiliation. After transfer, an inmate is permitted to change his or her

Defendants' Motion for Summary Judgment

*Worthy v. Antrim, et al.*

3:05-cv-00248 (TMB)

1641854.1

religious affiliation by following an established policy. (Affidavit of Aguirre, Exhibit F). (Policy 20-102, Exhibit B).

The procedure for change of religious preference set by CCA Policy 20-102, provides in part:

> … The religious preference will be in accordance with the contracting agency policy. If religious preference is not specified in the inmate file at the time of intake, the inmate will be given an opportunity to designate a religious preference. This preference shall be entered into the inmates file.
>
> … Inmates may request a change in their religious preference (or declare a religious preference if previously designated as "none" or "no preference") at any time by:
>
> i.   Completing a Request to Change Religious Preference Form.
>
> ii.  Attaching a written statement from an accredited minister/religious leader who is not an inmate.
>
> iii. Submitting the completed form and written statement to the Chaplain for processing and distribution.

(Policy 20-102, Exhibit B).

When Worthy was transferred from CCA's Central Arizona Detention Center to CCA's Florence Correctional Center there was no change in preference because it was already established in his institutional file. The religious preference found in Worthy's institution file from CADC became the religious preference of record for Worthy at the FCC facility consistent

with Policy 20-102.  (Plaintiff's Booking sheets, Exhibit C).
(Affidavit of Aguirre, Exhibit F).

In March 2005, Worthy professed to be Jewish and requested
that he be provided with a copy of the Torah, kosher meals,
access to prayer oils, and anything else pertaining to the
Jewish religion.  (Request for service dated March 14, 2006,
Exhibit D).  Chaplain Aguirre attempted to verify Worthy's
religious background as Jewish and discovered that Worthy had
listed no religious preference in his institutional file.
(Affidavit of Aguirre, Exhibit F).  Chaplain Aguirre explained
policy 20-102 to Worthy, provided him with a Form 20-102A,
Request to Change Religious Preference (Exhibit E), and even
went so far as to facilitate a telephone call between the Aleph
Institute and Worthy to assist him in verifying his cultural and
religious background to establish his Jewish Religion.
(Affidavit of Aguirre, Exhibit F).  Worthy refused to give the
Aleph Institute required personal information and they could not
assist him further.  (Worthy deposition, Exhibit A).  Worthy
acknowledged involvement of the Aleph Institute during his
deposition:

> Q.   All Right, and it appears as though the
> chaplain instructed you to write —what is
> it?

       A.    Aleph Institute.

       Q.    To Aleph Institute so that they may help you verify your cultural and religious background as Jewish.  It appears as though the Chaplain is saying that he assisted you with a phone call to this institute and they stated that if you write to them they would assist you, and then apparently a form 20-102A, request to Change Religious Preference is needed so that the Chaplain could assist you in acquiring what you have coming.  That was his response to you, correct?

       A.    Yes it is.

       Q.    Now, I take it from his Response to you that you had a discussion with him concerning this Aleph Institute; is that right?

       A.    Yes.  The Chaplain and I had several discussions about it and we actually did call the Aleph Institute place up.  They wanted me to provide private information to their organization.  I have never heard of their organization before and didn't feel comfortable giving them any of my private information.  I don't know what the Aleph Institute is.  They claim to be a Jewish Religious organization, but I haven't heard of them.

       Q.    I think they're an organization that helps prisoners obtain educational materials, religious materials and those types of things while they're institutionalized.

       A.    Never heard of them.

       Q.    So you essentially didn't want to provide them any information at all; is that correct?

       A.    Provide the Aleph Institute?

       Q.    Yes, sir.

       A.    Yeah, that's correct. Yes.

(Worthy Deposition, p. 30:12-25 and p. 31:1-19, Exhibit A).

    At the request of Worthy, Chaplain Aguirre then spoke with

Worthy's uncle, Robert Akrish, to further attempt to assist

Worthy in obtaining the documentation needed to verify Worthy's religious background information for the Aleph Institute. Worthy continued to demand the religious materials pertaining to the Jewish religion but refused to fill out the required Request to Change Religious Preference Form or submit the information needed to the Aleph Institute for assistance with verification. (Request for Service dated March 29, 2005, Exhibit G).  (Request for Service dated April 18, 2005, Exhibit H).

On April 5, 2005 Worthy filed a Prisoner Grievance with the Grievance Coordinator, "ordering" the facility to recognize his Jewish faith and allow him access to the Torah, Kosher Meals, Yarmulke, prayer oils, and anything else Mr. Worthy believed he may need to practice his Jewish religion.  (Prisoner Grievance Dated 4/5/05, Exhibit I).  Pursuant to the Grievance Policy, the Grievance was reviewed and screened back to Worthy stating that he was not being denied a religion but rather being asked to follow policy 20-102.  (Grievance Screening Form dated 4-6-05, Exhibit J).  On April 8, 2005, Worthy filed an appeal of the findings of the grievance officer.  The appeal decision was rendered on April 13, 2005 concurring with the findings of the grievance officer and stating again to Worthy that he must follow Policy 20-102 and that assistance would be provided by

Chaplain Aguirre to aid Worthy in complying with the Policy. (Request for Service dated April 8, 2005, Exhibit K).

In an effort to assure Worthy's request was acted upon appropriately, Chaplain Aguirre contacted the State of Alaska Department of Corrections, Chaplaincy Services to confirm the procedure to designate the Jewish faith when a prisoner claims to be Jewish, and was given information regarding Jewish Prisoners Services International. (Affidavit Aguirre, Exhibit F). Jewish Prisoners Services International provides a free service to prisoners for the purposes of the required verification process. (Affidavit Aguirre, Exhibit F). After telling Worthy he could use the service, he again refused to provide any information to the Jewish Prisoner Services International organization to assist with the verification process. (Affidavit Aguirre, Exhibit F).

Traditional religious law defines a Jew as one who is born of a Jewish Mother or one who has properly been converted to Judaism according to Halacha. (Affidavit Aguirre, Exhibit F). The Jewish faith group is the one faith group to which a prisoner cannot convert if they are not already officially registered as being Jewish. (Affidavit Aguirre, Exhibit F). This is a restriction by the religion itself and not one of CCA

or the Alaska Department of Corrections. (Affidavit Aguirre, Exhibit F). CCA recognizes and abides by the restriction established by the Jewish Religion. (Affidavit Aguirre, Exhibit F).

On September 9, 2005 Worthy submitted a Release of Funds Authorization and Approval for the purchase of various items including prayer oils. (Release of Funds Authorization and Approval dated 9-9-05, Exhibit L). The Authorization was denied because there was no religious preference listed and Worthy had not submitted the appropriate Change of Religion Preference form or the verification of his Jewish background. (Release of Funds Authorization and Approval dated 9-9-05, Exhibit L).

Worthy has never requested that Jewish Services be started at FCC. (Affidavit Aguirre, Exhibit F). He had not been prevented from obtaining a copy of or reading the Torah or saying prayers in his cell. (Affidavit Aguirre, Exhibit F). Worthy has never been prevented from verifying his religious faith as Jewish and filing the proper paperwork to change his religious preference in his institutional file he simply refused to do so. (Worthy deposition, Exhibit A). As Worthy states:

        Q.   Well, you have the Torah, right?
        A.   A. Yes, I do.
        Q.   How did you get that?

```
A.    Judy Moore sent it to me
Q.    That wasn't intercepted or anything like
      that, Correct?
A.    No.
Q.    So you have the Torah and you say you pray.
      How often do you pray?
A.    Everyday.
Q.    And you read the Torah every day?
A.    Not every day.
Q.    Often?
A.    Fairly often
Q.    You said you don't know if they conducted
      Jewish services here at the facility.
A.    I don't believe that they do.  There's very
      few Jewish inmates in this facility.
Q.    Have you made a request that they institute
      services?
A.    Yes, I haven't made a request that they
      start services.  I've just made a request to
      see a rabbi, to speak with a rabbi.  There
      was another inmate and he's not here
      anymore.  I wanted him and I to be able to
      have services together.  He was Jewish as
      well.
```

(Worthy deposition, p. 22: 8-25 and p. 23:1-7, Exhibit A).

Worthy has not been denied the opportunity to freely exercise his religion, but he simply refuses to follow prison policy to change his religious preference. Since it is Worthy's conduct which is interfering with the exercise of his religion and not that of prison officials he can set forth no issue of fact and Defendants are entitled to judgment as a matter of law.

/ / /

/ / /

/ / /

Defendants' Motion for Summary Judgment
*Worthy v. Antrim, et al.*
3:05-cv-00248 (TMB)

1641854.1

## III. ARGUMENT AND LAW

### Supervisory Liability.

To state a cognizable RLUIPA (Religious Land Use And Institutionalized Persons Act, 42 U.S.C. § 2000cc-1(a)(1)) or 42 U.S.C. § 1983 claim, Plaintiff must establish he suffered a specific injury as a result of the specific conduct of a defendant, and also show an affirmative link between the injury and the defendant's conduct. *See Rizzo v. Good*, 423 U.S. 362, 371-72, 377, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). Supervisory officials cannot be held liable for constitutional deprivations at the hands of subordinates, absent participation, direction or failure to train by the supervisory official. *See Ybarra v. Reno Thunderbird Mobile Home Village*. 723 F.2d 675, 680 (9th Cir. 1984) (emphasis added). A supervisor can only be personally liable for his "own culpable action or inaction in the training, supervision, or control of his subordinates," in violation of, or in callous disregard for, the rights of others. *Larez v. Los Angeles*, 946 F.2d 630 (9th Cir. 1991).

In this case, Plaintiff's claims that Defendants Antrim, Ensch, and Luna violated his RLUIPA and First Amendment rights by prohibiting him from participating in the Jewish religion fails where Defendants Antrim, Ensch, and Luna did not

participate, direct, or fail to train subordinates. Plaintiff has no evidence Antrim, Ensch, or Luna participated in the decisions regarding Plaintiff's request to practice the Jewish religion. Without evidence of actual participation or a failure to train there is no issue of fact for resolution by the jury. Defendants also assert that Plaintiff has no standing to claim that Defendants violated his RLUIPA or First Amendment rights.

Plaintiff does not have standing to assert such a claim where it is undisputed that he has not established he is a member of the Jewish religion. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)(finding a plaintiff must show he has personally suffered actual or threatened injury to establish standing). Because Plaintiff has no standing and is unable to establish personal participation, direction or failure to train by Defendants Antrim, Ensch, and Luna regarding these alleged deprivations, Defendants Antrim, Ensch, and Luna are entitled to summary judgement.

Defendant CCA is also entitled to summary judgment on these claims as Plaintiff has no evidence of a CCA policy or custom

which was the moving force behind the alleged constitutional violation. It is well settled that CCA cannot be held liable on the theory of *respondeat superior*. *See Monell v. Department of Social Serv.*,. 436 U.S. 658, 690-91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). Nor does Plaintiff have any evidence of improper training or supervision which caused a violation of his rights. *See Id.* Finally, even if Plaintiff could identify a potentially unconstitutional policy or practice, there is no evidence that this policy was the moving force behind Plaintiff's alleged injuries. *See Id.* Because Plaintiff cannot point to any evidence that Defendant CCA condoned, ratified or encouraged deprivation of inmates' constitutional rights through a failure to train or supervise, Defendant CCA is entitled to summary judgment on Plaintiff's RLUIPA and First Amendment claims.

### **RLUIPA Claim**

RLUIPA requires Worthy to demonstrate a substantial burden on his religious exercise. Worthy must show that some government action has put a substantial burden on him to modify his religious behaviour or prevents him from engaging in his religious conduct in a way that is greater than a mere

inconvenience. *See, e.g., Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752 (7th Cir. 2003); *United States v. Salerno*, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). A substantial burden is one which requires an individual to choose between following the precepts of his religion and forfeiting benefits, on the one hand, and abandoning one of precepts of his religion on the other. *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). As such, Worthy must show that the prison policy cannot be applied under any circumstances without a burden on religious exercise. *United States v. Salerno*, *supra*; *Cornel v. Paul*, 316 F.Supp.2d 868 (D. Arizona 2004) (holding that a substantial burden exists when it prevents a prisoner from engaging in conduct both important and motivated by a sincere religious belief). Here, Worthy fails to show a substantial burden on the exercise of his religion. The policy to change religious preference requires him to identify the preference and verify his cultural and religious background. (Policy 20-102, Exhibit B). These two steps are at most an inconvenience for Worthy. He merely needs to fill out the form and obtain the verification from either of the two sources provided to him by Chaplain Aguirre. (Affidavit Aguirre, Exhibit F). The requirement to verify the Jewish faith through

one of the entities is one established by the Jewish faith and not the prison.  (Affidavit Aguirre, Exhibit F).  The prison policy simply requires Worthy to designate his preference and abide by the precepts of his religion to verify his Jewish faith.  There is no requirement which prevents Worthy from exercising his religion or forces him to forego a tenet of his religion in order to comply with the policy.

Worthy also fails to allege or establish a jurisdiction prerequisite to trigger application of RLUIPA to his claim. Worthy must show that the Alaska Department of Corrections receives federal operational funding for religious programming or other federal funding, or that there is a burden which affects interstate commerce in order to set forth a claim that RLUIPA applies to this action.  *Ephraim v. Angelone*, 313 F.Supp.2d 569 (E.D. Va. 2003); *United States v. Lopez*. 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995).  Worthy has no facts which demonstrate the application of either the Spending Clause or the Commerce Clause to his claims.  Because there are no jurisdictional facts summary judgment should be entered.

### First Amended Claim

For the reasons Worthy's RLUIPA claims fails, so too does his First Amendment claim.  The *Turner v. Safley* rational

relationship standard applies to all cases in which a prisoner asserts that a prison regulation violates the inmate's constitutional rights. *See Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Thus, restrictions that infringe on an inmate's exercise of his religion will be upheld if they are reasonably related to a legitimate penological interests. *Id.*

Here, Plaintiff's claims cannot succeed under the Turner rational basis standard applied to prisoners' claims under the First Amendment's Free exercise clause. Defendants' policy for religious preference changes is rationally related to the legitimate penological interest of maintaining prison security, prison management, safety, and the legitimate penological interest of reasonable allocation of prison resources. *See Stefanow v. McFadden*, 103 F.3d 1466, 1472 (9th Cir. 1996); *Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir. 2002).

Here, the prison has a legitimate interest in assuring that legitimate changes to religious preferences are based upon the inmates sincere beliefs rather than an attempt to attend services in order to promote gang, drug, or other illicit activities. Further, the policy in no way prevents or prohibits Worthy from exercising his religion once he completes the

appropriate paperwork.  Since the policy is rationally related to a legitimate penological purpose Worthy can set forth no issue of fact, and Defendants' are entitled to judgment as a matter of law.

Accordingly, Plaintiff's First Amendment Free Exercise claim cannot survive summary judgment.

### Injunctive Relief

To obtain injunctive relief Worthy must show: 1) irreparable injury if the injunction is not issued; and 2) a likelihood of success on the merits. *Pharmaceutical Research and Manufacturers of America v. Walsh*, 539 U.S. 644, 123 S. Ct. 1855, 155 L.Ed.2d 889 (2003); *See also, Doran v. Salem Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975).

Injunctive relief is available to a party who demonstrates either (1) a combination of probable success on the merits and the possibility of irreparable harm; or (2) that serious questions are raised and the balance of hardships tips in his favor.  The two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probably of success decreases. *Sammartano v. First Judicial District*, 303 F.3d 959 (9th Cir. 2002); *See also, Metro Pub. Ltd. v. San Jose Mercury News*, 987 F.2d 637 (9th 1993).

As previously set forth, Worthy cannot show a likelihood of success on the merits or irreparable harm. As such, there is no issue of fact and the Complaint should be dismissed.

### State Law Claims

Worthy claims his free exercise of religion and right to reformation rights have been denied in violation of Alaska's Constitution. Both claims have no merit and should be dismissed.

### Religious Claim

Worthy claims the polices and practices of CCA and the Alaska Correctional Ministries violate his right to exercise his religion as guaranteed by Art. I §4 of the Alaska Constitution. Worthy's rights have not been violated because the policy Worthy must follow only incidentally impacts his free exercise of religion and the policy is neutral in its application. Worthy does not dispute he declared himself agnostic upon entry into the CC prison system. (Worthy deposition, Exhibit A). If Worthy wants to change his preference then he must seek a change in the designation pursuant to Policy No. 20-102A. (Affidavit, Aguirre, Exhibit F). Worthy simply refuses to fill out the forms and obtain the needed verification. (Affidavit Aguirre, Exhibit F).

Defendants' Motion for Summary Judgment
*Worthy v. Antrim, et al.*
3:05-cv-00248 (TMB)

1641854.1

CCA's religious change of preference policy furthers the compelling interest of FCC in maintaining safety and security. Inmates at FCC have used religious services to engage in criminal activity, drug trafficking, and prison disturbances. Because this type of conduct compromises security, FCC has policies and procedures in place to balance the need of the prison concerning safety and security with that of the inmates to practice their religion. The change of religious preference procedure fosters this balance by allowing inmates an ability to change their preference while at the same time allowing the prison to maintain order and security for prisoners who do not hold a sincere belief, but just want different food, privileges, or the ability to engage in disruptive or illicit activities. The restrictions do not prevent Worthy from exercising his religion, they only constitute an inconvenience at most.

In Alaska, a prison regulation which is neutral does not violate the Constitution even if there is some incidental impact on the free exercise of religion. *Larson v. Cooper, et al.*, 90 P.3d 125 (Alaska 2004). Since the FCC policy is neutral, and is reasonably related to legitimate penological interests, there is no constitutional violation. As such summary judgment is appropriate.

Defendants' Motion for Summary Judgment
*Worthy v. Antrim, et al.*
3:05-cv-00248 (TMB)

1641854.1

**Reformation Claim.**

Worthy claims he is being denied access to a rehabilitation programs in violation of Alaska Constitution Article I, §12.  The Constitution does provide inmates incarcerated in Alaska with a right to access to rehabilitation programming.  *Abraham v. State*, 585 P.2d 526 (Alaska 1978); *Smith v. State, Dept. of Revenue*, 790 P.2d 1352 (Alaska 1990).  The right is not unlimited and is constrained by reasonable prison regulations.  *Id.*  Penal administration is based <u>both</u> on the need for reformation and upon the need for protecting the public.  *Hays v. State of Alaska*, 830 P.2d 783 (Alaska 1992).  Unless an inmate is denied <u>all</u> rehabilitative opportunities there is no issue of constitutional magnitude necessitating resolution.  *Id.*  In other cases the Alaskan Courts have held there is no absolute right to rehabilitation programs and denied a prisoner's request for "religious visits."  *Larson v. Cooper*, 90 P.3d 125 (Alaska 2004).

Worthy cannot produce evidence the religious preference policy implicates his rehabilitation, and denies him all opportunity to participate in rehabilitative programming.  There is no issue of fact since Worthy can participate in his religion once he files the appropriate forms.  The policy does not

prevent him from participating in religious activities. As a result Defendants' are entitled to judgment as a matter of law.

### Breach of Contract Claim.

It is well settled that a person not a party to a contract cannot sue for breach of contract. Although Plaintiff alleges he is a third party beneficiary to the contract between ADOC and CCA, he fails to allege or provide evidence that he is a party of the contract. Because Plaintiff is not a party to the contract, Defendant CCA is entitled to judgment as a matter of law.

To bestow third-party beneficiary status on a third-party, the original contracting parties must have intended their contract to benefit the third-party claimant. *Howell v. Ketchikan Pulp Co.*, 943 P.2d 1205, 1207 (Alaska 1997); *Kodiak Elec. Ass'n v. DeLaval Turbine, Inc.*, 694 P.2d 150,l54 (Alaska 1984); *State v. Osborne*, 607 P.2d 369, 371 (Alaska 1980).

Generally, a party contracting with the government is not liable to members of the public because, unless the parties manifest a different intent within the contract, they are merely incidental beneficiaries. *Nguyen v. United States Catholic Conf.*, 548 F.Supp. 133 (W.D. Pa. 1982); *aff'd.*, 719 F.2d 52 (3rd Cir. 1983); *Drummond v. University of PA*, 651 A.2d 572, 578 (Pa.

1994); Restatement (Second) of Contracts § 313(2)(a).  Evidence of mere intent to benefit some third party is not enough; there must be *affirmative language* in the contract demonstrating the contracting parties' intent that the promisor will be held liable to specific third parties in the event of nonperformance. *Drummond*, 651 A.2d at 579.   Moreover, Several courts have recognized that inmates are not third party beneficiaries to contracts related to their incarceration.  *See Johnson v. Lark*, 365 F.Supp. 289 (E.D. Mo. 1973); *Clifton v. Suburban Cable TV Co., Inc.*, 642 A.2d 512 (Pa.), *cert. denied*, 115 U.S. 1152 (1994).

In this case, CCA and the State of Alaska entered into a contract for the housing of Alaskan inmates at the FCC in Arizona.   There is no contract provision relating to CCA's liability to inmates for breach.   There also is no language which manifests a clear intent that inmates be designated as third party beneficiaries to the contract.  Worthy, is at best, only an incidental beneficiary to the contract and has no right to seek enforcement for damages.

Finally, there are strong public policy reasons for denying Plaintiff's third party beneficiary claim.   Having committed a serious violation of criminal law, Plaintiff should not be able

to assert that any aspect of his incarceration was intended for his benefit.  His incarceration was intended to benefit the public at large by isolating him  from society, deterring future misconduct, and obtaining retribution on behalf of his victim. Further, allowing inmates to interfere in the performance of the contract would permit convicted felons to manipulate public policy choices reflected in the government's decisions about enforcement of its rights under a major public contract. Therefore, Defendants are entitled to summary judgment on Plaintiff's breach of contract claim.

## IV.  CONCLUSION

Plaintiff cannot establish a genuine issue of material fact for any claim in his Complaint.  Because there is no issue of fact, Defendants' are entitled to summary judgment.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

RESPECTFULLY SUBMITTED this 16th day of June 2006.

JONES, SKELTON & HOCHULI, P.L.C.


By s/Timothy J. Bojanowski
    Daniel P. Struck
    Timothy J. Bojanowski
    2901 N. Central Ave., Suite 800
    Phoenix, Arizona  85012
    Tel:  (602) 263-7324
    Fax:  (602) 200-7837
    E-mail: tbojanowski@jshfirm.com

    Michael D. Corey
    ABA #8511130
    Sandberg, Wuestenfeld & Corey
    701 West 8th Avenue, Suite 1100
    Anchorage, Alaska  99501
    Tel:  (907) 276-6363
    Fax:  (907) 276-3528

    *Attorneys for Defendants Antrim,*
    *Ensch, Aguirre, and Corrections*
    *Corporation of America*

This is to certify that a true and
correct copy of the foregoing was
served by ( XX ) mail (    ) hand (    ) fax
this _16th day of June 2006, to:

Earl Worthy, III, #368520
**FLORENCE CORRECTIONAL CENTER**
Post Office Box 6200
Florence, Arizona 85232
*Plaintiff Pro Per*


s/Dianne Clark

Defendants' Motion for Summary Judgment

*Worthy v. Antrim, et al.*

3:05-cv-00248 (TMB)

1641854.1