**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE

EARL WORTHY, III,                         )
                                          )
        Plaintiff,                        )
                                          )
vs.                                       ) Case No.
                                          ) 3:05-cv-248 (TMB)
MARC (SIC) ANTRIM, COMMISSIONER           )
DEPARTMENT OF CORRECTIONS, STATE          )
OF ALASKA,                                )
                                          )
REV. MIKE ENSCH, CHAPLAIN (SIC)           )  **DEPOSITION OF:**
COORDINATOR, ALASKA CORRECTIONAL          )  **EARL WORTHY, III**
MINISTRIES, DEPARTMENT OF                 )
CORRECTIONS, STATE OF ALASKA,             ) Florence, Arizona
                                          ) April 11, 2006
FRANK LUNA, WARDEN & CEO, FLORENCE        )     9:45 a.m.
CORRECTIONAL CENTER,                      )
                                          )
CORRECTIONS CORPORATION OF                )
AMERICA,                                  )
                                          )
CHAPLAIN AGUIRRE, CHAPLAIN, ALASKA        )
CONTRACT, FLORENCE CORRECTIONAL           )
CENTER,                                   )
                                          )
        Defendants.                       )
                                          )
Sued in their official and               )
individual capacities,                    )
_____ )

**REPORTED BY:**
SUZANNE SIMMS, RPR
Certified Reporter
Certificate No. 50118

**PREPARED FOR:**
THE COURT

(Original)



CERTIFIED REPORTERS

T 602.230.5454
F 602.230.8884
E simmsreporters@cox.net

350 East Virginia Avenue
Suite 150
Phoenix, Arizona 85004

1   quote, unquote, permitted to?

2       A.    Yes.

3       Q.    How do you do that?

4       A.    Read the Torah, pray.  There aren't any services

5   than I'm aware that they have here, and if there are, I

6   have pretty much been denied access to religious materials

7   that I need to practice my faith.

8       Q.    Well, you have the Torah, right?

9       A.    Yes, I do.

10      Q.    How did you get that?

11      A.    Judy Moore sent it to me.

12      Q.    That wasn't intercepted or anything like that,

13  correct?

14      A.    No.

15      Q.    So you have the Torah and you say you pray.  How

16  often do you pray?

17      A.    Every day.

18      Q.    And you read the Torah every day?

19      A.    Not every day.

20      Q.    Often?

21      A.    Fairly often.

22      Q.    You said you didn't know if they conducted Jewish

23  services here at the facility.

24      A.    I don't believe that they do.  There's very few

25  Jewish inmates in this facility.

1    Q.    Have you made a request that they institute

2  services?

3    A.    Yes.  I haven't made a request that they start

4  services.  I've just made a request to see a rabbi, to

5  speak with a rabbi.  There was another inmate and he's not

6  here anymore.  I wanted him and I to be able to have

7  services together.  He was Jewish as well.

8    Q.    What else?

9    A.    I've requested a yarmulke, prayer oils, kosher

10 diet, and any other materials that would pertain to my

11 faith.

12   Q.    Like what?

13   A.    Anything that comes up that I realize that I

14 might need.

15   Q.    How long have you been, like, practicing your

16 faith here at this facility?

17   A.    I have been practicing my faith off and on

18 throughout my entire life.

19   Q.    Well, I guess what I'm looking to do is determine

20 whether you've been doing it here at the facility even

21 without the services or speaking to a rabbi.

22   A.    There's only so much that I can do without their

23 services.  Without their help and assistance, there's only

24 so many things I can do.

25   Q.    Have you participated in any type of diet

1    to say, hey, we can help you do this.  We can help you get

2    your diet.  We can help you get a new Torah sent in.  We

3    can help you with a yarmulke.  We can help you with all

4    the religious materials.

5              I was under the impression chaplains are

6    supposed to help inmates who are seeking to be closer with

7    their faith and have access to the religious materials

8    they need, assist them in any way necessary.

9    Q.    What religion are you designated here at this

10   facility by facility records?

11   A.    By their records, I'm not registered as any

12   religion at all.  I believe they have me down as being

13   atheist, but upon entering this facility I said that I was

14   Jewish at intake.  Upon entering this facility here, not

15   the one next door, Central Arizona Detention Center.  Upon

16   entering Florence Correctional Center I stated I was

17   Jewish at the intake.  I requested a copy of that

18   paperwork and nobody's provided it.

19   Q.    What did you tell them when you were over at

20   CADC?

21   A.    I'm not certain what I put down, just that I'm

22   not religious.

23   Q.    You're saying to me that the chaplain will not

24   allow you to practice your faith, correct?

25   A.    Yes, that's correct.

1    request by you to the chaplain that he provide to you a

2    copy of the Torah, kosher meals and access to, looks like,

3    "order prayer oils along with anything else pertaining to

4    the Jewish religion.  Please respond to -- " is that

5    three?

6         A.    This.

7         Q.    Oh, this request.  All right.  And that's your

8    signature there?

9         A.    "These requests," yes.

10        Q.    I see.  Is that your signature there?

11        A.    Yes, it is.

12        Q.    All right.  And it appears as though the chaplain

13   instructed you to write -- what is this?

14        A.    Aleph Institute.

15        Q.    To Aleph Institute so that they may help you

16   verify your cultural and religious background as Jewish.

17   It appears as though the chaplain is saying that he

18   assisted you with a phone call to this institute and they

19   stated that if you write to them they would assist you,

20   and then apparently a Form 20-102A, Request to Change

21   Religious Preference is needed so that the chaplain could

22   assist you in acquiring what you have coming.  That was

23   his response to you, correct?

24        A.    Yes, it is.

25        Q.    Now, I take it from his response to you that you

1  had a discussion with him concerning this Aleph Institute;

2  is that right?

3      A.   Yes.  The chaplain and I had several discussions

4  about it and we actually did call this Aleph Institute

5  place up.  They wanted me to provide private information

6  to their organization.  I have never heard of their

7  organization before and didn't feel comfortable giving

8  them any of my private information.  I don't know what the

9  Aleph Institute is.  They claim to be a Jewish religious

10  organization, but I haven't heard of them.

11     Q.   I think they're an organization that helps

12  prisoners obtain educational materials, religious

13  materials and those types of things while they're

14  institutionalized.

15     A.   Never heard of them.

16     Q.   So you essentially didn't want to provide them

17  any information at all; is that correct?

18     A.   Provide the Aleph Institute?

19     Q.   Yes, sir.

20     A.   Yeah, that's correct.  Yes.

21     Q.   The phone call that you had with them, that was

22  something that the chaplain arranged for you; is that

23  right?

24     A.   Yes.

25     Q.   And it must have been sometime before his

1   your right to signature.  You have to let our court

2   reporter know whether you want to read and sign or waive.

3                THE WITNESS:  Yeah, definitely I'd like to

4   read and sign it.

5                MR. BOJANOWSKI:  Understand that if you do

6   read and sign, you're not permitted to maintain a copy it.

7                THE WITNESS:  Oh, really?

8                MR. BOJANOWSKI:  That's correct, sir.  I

9   guess we're off.

10               THE WITNESS:  That's okay.  That's good.

11               (Discussion off the record.)

12               MR. BOJANOWSKI:  Let's go back on.

13               Mr. Worthy, after we went off the record,

14  indicates he's had a change of heart, I suppose, in

15  signature.  He didn't quite understand what the process

16  was.  After an explanation, it's my understanding he

17  wishes to waive his signature.

18               THE WITNESS:  That's correct.

19               MR. BOJANOWSKI:  All right, Mr. Worthy,

20  thank you very much.

21               (The deposition concluded at 11:16 a.m.)

22

23               (Signature waived.)
                 _____
24               EARL WORTHY, III

25

1   STATE OF ARIZONA    )
                        )           ss.
2   COUNTY OF MARICOPA  )

3               BE IT KNOWN that the foregoing deposition

4   was taken by me pursuant to stipulation of counsel; that

5   I, Suzanne Simms, RPR, a Certified Court Reporter in the

6   State of Arizona, and by virtue thereof authorized to

7   administer an oath; that the witness before testifying was

8   duly sworn by me to testify to the whole truth; that the

9   questions propounded by counsel and the answers of the

10  witness thereto were taken down by me in shorthand and

11  thereafter reduced to print by computer-aided

12  transcription under my direction; that the foregoing 65

13  pages are a full, true and accurate transcript of all

14  proceedings and testimony had and adduced upon the taking

15  of said deposition, all to the best of my skill and

16  ability.

17              I FURTHER CERTIFY that I am in no way

18  related to nor employed by any of the parties hereto nor

19  am I in any way interested in the outcome hereof.

20              DATED at Phoenix, Arizona, this 20th day

21  of April, 2006.

22

23

24                          SUZANNE SIMMS, RPR
                            Certified Court Reporter
25                          Certificate No. 50118

**EXHIBIT B**

Case 1:05-cv-00248-TMB   Document 38-2   Page 1 of 3   Filed 06/16/2006   Page 11 of 54

| CHAPTER 20: | INMATE/DETAINEE SERVICES AND PROGRAMS |
|---|---|
| SUBJECT: | CHAPLAIN/RELIGIOUS SERVICES |
| SUPERSEDES: | OCTOBER 25, 2001 |
| EFFECTIVE DATE: | DECEMBER 6, 2004 |
| APPROVED: | *SIGNATURE ON FILE*<br>FRANK LUNA - WARDEN |

**20-102.1    PURPOSE:**

The purpose of this policy is to establish and describe the staff position of Chaplain, the tasks, privileges and responsibilities of the person holding that position; and that person's relationship to the institution, its inmate/detainees and the community.

**20-102.2    AUTHORITY:**

Contract.

**20-102.3    DEFINITIONS:**

Chaplain - The person responsible for planning, direction and supervision of all aspects of the religious program at the facility under the supervision of the Programs Manager. The Chaplain is responsible for the approval and training of both lay and clergy volunteers from faith groups represented in the inmate/detainee population. The Chaplain assures equal status and protection for all religions represented in the inmate/detainee population. The Chaplain has access to all areas of the facility to fulfill these duties.

Legitimate Religious Practice - An activity offered by a Chaplain or sponsored by a faith group from the community. A faith group is generally recognized outside of the institution as an incorporated entity which advances spiritual and religious faith and conduct, and whose views are not defamatory, racial, political, divisive or negative in nature.

Religious Activity - An activity designed specifically for worship, religious instruction, or spiritual guidance.

Volunteers - Citizens from the community, designated by a faith group and recommended to the institution by that faith group, to donate time, skills and goodwill to enhance the religious activities of the institution. Volunteers are screened and selected on the basis of their personal qualities and the resources they can contribute to the religious activities of the institution.

**20-102.4    POLICY:**

The Florence Correctional Center will provide a full-time Chaplain to supervise religious programs at the institution. The Chaplain shall have Clinical Pastoral Education and the endorsement of the appropriate religious certifying body. In addition, the facility will provide space and equipment adequate for the conduct and administration of religious programs. Non-inmate clerical staff will be available to the Chaplain when dealing with confidential material.

**20-102.5    PROCEDURES:**

A.    The Chaplain in cooperation with the facility administrator, plans, directs, and supervises all aspects of the religious program including approval and training of both lay and clergy volunteers from faiths represented in the inmate population.

B.    The Chaplain will develop and maintain close relationships with religious resources in the community, especially faith groups and members of the clergy.

**PROPERTY OF CORRECTIONS CORPORATION OF AMERICA**

C.   The Chaplain will recommend to the Warden approval of proposed religious volunteers, after they have been screened and evaluated.

D.   Under supervision of the Programs Manager, the Chaplain will coordinate the volunteer ministries at the institution.

E.   The Chaplain will provide spiritual guidance to inmate/detainees who request such guidance.

  1.   Any inmate/detainee may approach the Chaplain for spiritual guidance or religious activity at the Florence Correctional Center.

  2.   Communication between an inmate/detainee and the Chaplain is confidential, except when an inmate/detainee's states that he plans harm to self or to others, or when his action will jeopardize the security of the facility.

  3.   The Chaplain will interview inmate/detainees referred to him by institutional staff.

  4.   The Chaplain is the staff member designated to deliver news of death or serious illness to or about an inmate/detainee.  In the absence of the Chaplain, reference will be made to. facility policy 16-100, Access to Telephones.

F.   The Chaplain will visit those inmate/detainees who are housed in the infirmary, and segregation units, at least once a week.

G.   The Chaplain will lead weekly religious services and arrange for services by faith groups requested by the inmate/detainee population.

H.   The Chaplain's ministry is to all inmate/detainees, regardless of the inmate/detainee's religious beliefs or affiliation.

  1.   Statement of Preference

    a.   Inmates shall be given the opportunity to designate a religious preference during the initial intake. The religious preference will be in accordance with the contracting agency policy. If religious preference is not specified in the inmate file at the time of intake, the inmate will be given an opportunity to designate a religious preference. This preference shall be entered in the inmate file.

    b.   Inmates may request a change in their religious preference (or declare a religious preference if previously designated as "none" or "no preference") at any time by:

      i.    Completing a Request to Change Religious Preference form.

      ii.   Attaching a written statement from an accredited minister/religious leader who is not an inmate.

      iii.  Submitting the completed form and written statement to the Chaplain for processing and distribution.

    c.   The Chaplain will monitor and review all inmate/resident requests for "Change of Religious Preference", for any misuse or abuse.

I.   The Chaplain has physical access to all areas of the institution to minister to inmate/detainees and to staff members.

J.   The Chaplain is accountable to the Warden through the Assistant Warden of programs and the Programs Manager.

**PROPERTY OF CORRECTIONS CORPORATION OF AMERICA**

**20-102.6    REVIEW:**

This policy will be reviewed annually by the Programs Manager and the Chaplain, who will recommend necessary revisions to the Warden.

**20-102.7    APPLICABILITY:**

All staff, inmate/detainees and volunteers.

**20-102.8    ATTACHMENTS:**

20-102A - Request to Change Religious Preference Form

**20-102.9    REFERENCES:**

ACA Standards.  The ACA Standards for this facility are:

<u>4-4512, 4-4513, 4-4514, 4-4515, 4-4516, 4-4517, 4-4518, 4-4519, 4-4520, and 4-4521.</u>

**EXHIBIT C**

Florence Correctional Center

# BOOKING SHEET

| Date In | Time In | Bill To | SSN |
|---|---|---|---|
| 6-16-02 | 10:00 | Alaska | 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 |

| Last Name | First | MI | ID Number |
|---|---|---|---|
| Worthy | Earl | | 388520 |

| Address | City | State | Zip |
|---|---|---|---|
| none | | | |

| Race | Sex | Age | Ht | Wt | Eyes | Hair |
|---|---|---|---|---|---|---|
| Black | M | 27 | 5'7" | 165 | Brn | Blk |

| Date of Birth | Place of Birth | Religious Preference |
|---|---|---|
| 11/28/74 | Seattle, WA | |

**Alias:** Earl Williams

**Charges (to be filled out by records):** Solicitation to Commit, 1st° Murder

**Current Medical Problems:** Asthma

| Emergency Contact | Relationship | Phone Number |
|---|---|---|
| | | |

| Address | City | State | Zip |
|---|---|---|---|
| | | | |

**Identifying Marks (describe and locate)**



| Intake Officer | Signature |
|---|---|
| | |

Corrections Corporation of America



Name: **WORTHY, EARL**

Cell: **203**    Loc: **B**    Location: **FCC**

Birth: **11/28/1974**    M    B    00/00/0000    SE    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    588520    7547    06/18/2002

NONE

USA

NO FAITH GROUP AFFILIATION S

**EXHIBIT D**

# REQUEST FOR SERVICE

Inmate Name _Earl Worthy III_ Number _368520_ Housing Location _JB207_

To _Chaplain C. Aguirre_ Date _3/14/05_

Subject (State briefly the problem on which you need assistance) _I am Jewish and would like to practice my religion. I would like a copy of the Torah provided, Kosher Meals, and access to order prayer oils along with anything else pertaining to the Jewish religion!!!_

_..._

_Please respond to these requests. Thank You!_

_Earl W. III_

Note: If necessary, you may be interviewed in order to handle your request. Your failure to specifically state your problem may result in no action being taken.

## DO NOT WRITE BELOW THIS LINE

Referred To: _____ By: _____ Date: _____

Disposition / Response _Sir as I instructed you to write the "Aleph Institute" so that they may help you verify your cultural and Religious background as a Jewish, I assisted you with a phone call to Aleph Institute and they stated that if you write them they would assist you. Please fill out Form 20-102A Request to Change Religious Preference so that I may assist you in acquiring what you have coming._

_Chaplain C. Aguirre_
Staff Member

_3/28/05_
Date

### Appointment to meet with staff

Staff member name _____
Staff member signature _____
Location of meeting _____
Time _____ Date _____
If no appointment is required initial here _____
600003-3148

NOTE: If this area is filled out it will be your place to meet with requesting staff member at the designated time.

ORIGINAL - INMATE    YELLOW - RESPONDENT

**EXHIBIT E**

**FLORENCE CORRECTIONAL CENTER**

20-102A

# REQUEST TO CHANGE RELIGIOUS PREFERENCE

INMATE NAME:_____ID#_____HOUSING_____

                         (PLEASE PRINT)

TO: <u>CHAPLAIN</u>

SUBJECT: <u>REQUEST TO CHANGE RELIGIOUS PREFERENCE</u>

Please change my religious preference FROM:_____

                               TO:_____

I understand that I will need a letter from the religious organization in which I am now practicing.

                             _____

                                (Inmate Signature)

## DO NOT WRITE BELOW THIS LINE

DISPOSITION/RESPONSE:_____

_____

_____

_____

_____

CHAPLAIN'S APPROVAL:_____

      DISAPPROVAL:_____

_____       _____

   (CHAPLAIN'S SIGNATURE)              (DATE)

ORIGINAL: INMATE
COPY: CHAPLAIN
COPY: INMATE RECORD

**EXHIBIT F**

Daniel P. Struck, Bar #012377
Timothy J. Bojanowski, Bar #022126
JONES, SKELTON & HOCHULI, P.L.C.
2901 North Central Avenue, Suite 800
Phoenix, Arizona  85012
Telephone:  (602) 263-7324
Fax:  (602) 200-7837
tbojanowski@jshfirm.com

Attorneys for Defendants Marc Antrim, Mike Ensch, Frank
Luna, Aguirre, and Corrections Corporation of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF ALASKA

## AT ANCHORAGE

Earl Worthy, III,

                              Plaintiff,

          v.

MARC [SIC] ANTRIM, COMMISSIONER
DEPARTMENT OF CORRECTIONS,
STATE OF ALASKA,

REV. MIKE ENSCH, CHAPLAIN [SIC]
COORDINATOR, ALASKA
CORRECTIONAL MINISTRIES,
DEPARTMENT OF CORRECTIONS,
STATE OF ALASKA,

FRANK LUNA, WARDEN & CEO,
FLORENCE CORRECTIONAL CNTR.,

CORRECTIONS CORPORATION OF
AMERICA,

CHAPLAIN AGUIRRE, CHAPLAIN,
ALASKA CONTRACT, FLORENCE
CORRECTIONAL CTR.,

                              Defendants.

Sued in their official and

individual capacities,

                         Defendants.     NO. 3:05-cv-00248 (TMB)

## AFFIDAVIT OF CHAPLAIN, CHRISTOPHER AGUIRRE

STATE OF ARIZONA    )

                        )   ss

County of  Pinal      )

I , **Christopher Aguirre**,  being  of the age of majority, of sound mind and first duly sworn under oath, depose and state, based upon personal knowledge, that:

1.   I am currently the Chaplain at Corrections Corporation of America's ("CCA") Florence Correctional Center ("FCC").

2.   I have been employed by CCA as Chaplain at FCC since September 2004.

3.   As Chaplain, I am responsible for planning, directing and overseeing all aspects of religious programs at FCC under the supervision of the Programs Manager. (See Policy 20-102, attached hereto as Exhibit 1.)

4.   That the attached records are  true and accurate copies of  records  regularly maintained by CCA at FCC, and said

records are business records of CCA, maintained during the regular course of business of CCA

5.    When an inmate is transferred to FCC, his institutional file from the sending jurisdiction or facility will contain information regarding religious affiliation.

6.    After transfer, an inmate is permitted to change his or her religious affiliation at any time by following an established procedure of Completing a Request to Change Religious Preference Form (See Form 20-102A, attached hereto as Exhibit 2), attaching a written statement from an accredited minister/religious leader who is not an inmate and submitting the completed form and written statement to the Chaplain for processing and distribution.

7.    The policy to require inmates to complete for 20-102A is put into place to promote safety, security and management of inmates as well as allow an inmate to practice their sincere religious beliefs.

8.    Pursuant to Worthy's institutional file, upon transfer to FCC from Central Arizona Detention Center, his religious affiliation was Agnostic.

9.    In March, 2005, Worthy professed to be Jewish and requested to practice the Jewish religion and be provided a copy of the Torah, prayer oils, kosher meals and anything else

pertaining to the Jewish Religion. (See Request for Service dated March 14, 2005 attached hereto as Exhibit 3).

10. I discussed policy 20-102 with Worthy and provided him a Request to Change Religious Preference form. I facilitated a telephone call between Worthy and the Aleph Institute to assist him in verifying his cultural and religious background to establish his Jewish religion but he refused to give them the required information and they could not assist him further. (See Request for Service dated 29, 2003, attached hereto as Exhibit 4).

11. I spoke with Worthy's uncle, Robert Akrish to assist with obtaining the documentation needed to verify Worthy's religious background information for the Aleph Institute. (Exhibit 4)

12. Worthy refused to fill out the required Request to Change Religious Preference form 20-102A stating the form does not apply to him. I again informed Worthy that the form is applicable to his situation and that he could practice his religion but he must submit the form in order to obtain the religious materials requested. (See Request for Service dated April 18, 2005, attached hereto as Exhibit 5). The request to change religious preference applies to all prisoners and all religions at the FCC Facility.

13.  In an effort to assure Mr. Worthy's request was acted upon appropriately, I contacted the State of Alaska Department of Corrections Chaplaincy Services to confirm the procedure to designate the Jewish faith when a prisoner claims to be Jewish, and was given information regarding Jewish Prisoners Services International. Jewish Prisoners Services International provides a free service to prisoners for the purposes of the required verification process. After telling Worthy he could use the service, he again refused to provide any information to the Jewish Prisoner Services International organization to assist with the verification process. (See memorandum from State of Alaska Department of Corrections to Chaplain Aguirre dated April 26, 2005, attached hereto as Exhibit 6).

14.  Traditional religious law defines a "Jew" as one who is born of a Jewish mother or one who has properly been converted to Judaism according to Halacha. The Jewish faith group is the one faith group to which a prisoner cannot convert if they are not already officially registered as being Jewish. This is a restriction by the religion itself and not one of prison policy. Prison policy recognizes and abides by the restriction established by the Jewish religion.

15.  Worthy has never requested that Jewish services be started at FCC.

16.  Worthy was not prevented from obtaining a copy of the Torah nor has he been prevented from reading the Torah.

17.  Worthy has not been prevented from saying prayers in his cell

18.  No one at the prison has prevented Worthy from verifying his religious faith as Jewish.


FURTHER, AFFIANT SAYETH NAUGHT.

I do declare under penalty of perjury the foregoing statements are true and correct.

Christopher Aguirre, Chaplain

STATE OF ARIZONA    )

                    )    ss

County of                )


SWORN TO BEFORE ME, and subscribed in my presence this 15ᵗʰ day of June, 2006.



Notary Public


My Commission expires: 11/8/2009

"OFFICIAL SEAL"
Josette L. Pouges
Notary Public-Arizona
Pinal County
My Commission Expires 11/8/2009

1642463.1

**EXHIBIT 1**

| CHAPTER 20: | INMATE/DETAINEE SERVICES AND PROGRAMS |
|---|---|
| SUBJECT: | CHAPLAIN/RELIGIOUS SERVICES |
| SUPERSEDES: | OCTOBER 25, 2001 |
| EFFECTIVE DATE: | DECEMBER 6, 2004 |
| APPROVED: | *SIGNATURE ON FILE*<br>FRANK LUNA - WARDEN |

**20-102.1**   **PURPOSE:**

The purpose of this policy is to establish and describe the staff position of Chaplain, the tasks, privileges and responsibilities of the person holding that position; and that person's relationship to the institution, its inmate/detainees and the community.

**20-102.2**   **AUTHORITY:**

Contract.

**20-102.3**   **DEFINITIONS:**

<u>Chaplain</u> - The person responsible for planning, direction and supervision of all aspects of the religious program at the facility under the supervision of the Programs Manager. The Chaplain is responsible for the approval and training of both lay and clergy volunteers from faith groups represented in the inmate/detainee population. The Chaplain assures equal status and protection for all religions represented in the inmate/detainee population. The Chaplain has access to all areas of the facility to fulfill these duties.

<u>Legitimate Religious Practice</u> - An activity offered by a Chaplain or sponsored by a faith group from the community. A faith group is generally recognized outside of the institution as an incorporated entity which advances spiritual and religious faith and conduct, and whose views are not defamatory, racial, political, divisive or negative in nature.

<u>Religious Activity</u> - An activity designed specifically for worship, religious instruction, or spiritual guidance.

<u>Volunteers</u> - Citizens from the community, designated by a faith group and recommended to the institution by that faith group, to donate time, skills and goodwill to enhance the religious activities of the institution. Volunteers are screened and selected on the basis of their personal qualities and the resources they can contribute to the religious activities of the institution.

**20-102.4**   **POLICY:**

The Florence Correctional Center will provide a full-time Chaplain to supervise religious programs at the institution. The Chaplain shall have Clinical Pastoral Education and the endorsement of the appropriate religious certifying body. In addition, the facility will provide space and equipment adequate for the conduct and administration of religious programs. Non-inmate clerical staff will be available to the Chaplain when dealing with confidential material.

**20-102.5**   **PROCEDURES:**

A.   The Chaplain in cooperation with the facility administrator, plans, directs, and supervises all aspects of the religious program including approval and training of both lay and clergy volunteers from faiths represented in the inmate population.

B.   The Chaplain will develop and maintain close relationships with religious resources in the community, especially faith groups and members of the clergy.

**PROPERTY OF CORRECTIONS CORPORATION OF AMERICA**

C. The Chaplain will recommend to the Warden approval of proposed religious volunteers, after they have been screened and evaluated.

D. Under supervision of the Programs Manager, the Chaplain will coordinate the volunteer ministries at the institution.

E. The Chaplain will provide spiritual guidance to inmate/detainees who request such guidance.

   1. Any inmate/detainee may approach the Chaplain for spiritual guidance or religious activity at the Florence Correctional Center.

   2. Communication between an inmate/detainee and the Chaplain is confidential, except when an inmate/detainee's states that he plans harm to self or to others, or when his action will jeopardize the security of the facility.

   3. The Chaplain will interview inmate/detainees referred to him by institutional staff.

   4. The Chaplain is the staff member designated to deliver news of death or serious illness to or about an inmate/detainee. In the absence of the Chaplain, reference will be made to. facility policy 16-100, Access to Telephones.

F. The Chaplain will visit those inmate/detainees who are housed in the infirmary, and segregation units, at least once a week.

G. The Chaplain will lead weekly religious services and arrange for services by faith groups requested by the inmate/detainee population.

H. The Chaplain's ministry is to all inmate/detainees, regardless of the inmate/detainee's religious beliefs or affiliation.

   1. Statement of Preference

      a. Inmates shall be given the opportunity to designate a religious preference during the initial intake. The religious preference will be in accordance with the contracting agency policy. If religious preference is not specified in the inmate file at the time of intake, the inmate will be given an opportunity to designate a religious preference. This preference shall be entered in the inmate file.

      b. Inmates may request a change in their religious preference (or declare a religious preference if previously designated as "none" or "no preference") at any time by:

         i. Completing a Request to Change Religious Preference form.

         ii. Attaching a written statement from an accredited minister/religious leader who is not an inmate.

         iii. Submitting the completed form and written statement to the Chaplain for processing and distribution.

      c. The Chaplain will monitor and review all inmate/resident requests for "Change of Religious Preference", for any misuse or abuse.

I. The Chaplain has physical access to all areas of the institution to minister to inmate/detainees and to staff members.

J. The Chaplain is accountable to the Warden through the Assistant Warden of programs and the Programs Manager.

**PROPERTY OF CORRECTIONS CORPORATION OF AMERICA**

**20-102.6**      **REVIEW:**

This policy will be reviewed annually by the Programs Manager and the Chaplain, who will recommend necessary revisions to the Warden.

**20-102.7**      **APPLICABILITY:**

All staff, inmate/detainees and volunteers.

**20-102.8**      **ATTACHMENTS:**

20-102A - Request to Change Religious Preference Form

**20-102.9**      **REFERENCES:**

ACA Standards. The ACA Standards for this facility are:

**4-4512, 4-4513, 4-4514, 4-4515, 4-4516, 4-4517, 4-4518, 4-4519, 4-4520, and 4-4521.**

**PROPERTY OF CORRECTIONS CORPORATION OF AMERICA**

**EXHIBIT 2**

# REQUEST TO CHANGE RELIGIOUS PREFERENCE

INMATE NAME:_____ ID#_____ HOUSING_____

                **(PLEASE PRINT)**

TO: **CHAPLAIN**

SUBJECT: **REQUEST TO CHANGE RELIGIOUS PREFERENCE**

**Please change my religious preference FROM:**_____

                        **TO:**_____

**I understand that I will need a letter from the religious organization in which I am now practicing.**

_____
                        **(Inmate Signature)**

**DO NOT WRITE BELOW THIS LINE**

DISPOSITION/RESPONSE:_____

_____

_____

_____

_____

CHAPLAIN'S APPROVAL:_____

      DISAPPROVAL:_____

_____      _____
   **(CHAPLAIN'S SIGNATURE)**           **(DATE)**

ORIGINAL: INMATE
COPY: CHAPLAIN
COPY: INMATE RECORD

**EXHIBIT 3**

# REQUEST FOR SERVICE

Inmate Name _Earl Worthy III_    Number _368520_    Housing Location _JB207_

To _Chaplain C. Aguirre_        Date _3/14/05_

Subject (State briefly the problem on which you need assistance) _I am Jewish and would like to practise my religion. I would like a copy of the Torah provided, Kosher Meals, and access to order prayer oils along with anything else pertaining to the Jewish religion !!!_

_Please respond to these requests. Thank You!_

_Earl W III_

Note: If necessary, you may be interviewed in order to handle your request. Your failure to specifically state your problem may result in no action being taken.

## DO NOT WRITE BELOW THIS LINE

Referred To: _____ By: _____ Date: _____

Disposition / Response _Sir as I instructed you to write the "Aleph Institute" so that they may help you verify your cultural and Religious background as Jewish I assisted you with a phone call to Aleph Institute and they stated that if you write them they would assist you. Please fill out Form 20-102A Request to Change Religious Preference so that I may assist you in acquiring what you have coming._

_Chaplain C Aguirre_
Staff Member

_3/28/05_
Date

## Appointment to meet with staff

Staff member name _____
Staff member signature _____
Location of meeting _____
Time _____ Date _____
If no appointment is required initial here _____

68P00 X 3148

NOTE: If this area is filled out it will be your place to meet with requesting staff member at the designated time.

ORIGINAL - INMATE      YELLOW - RESPONDENT

**EXHIBIT 4**

# REQUEST FOR SERVICE

Inmate Name _Earl Worthy_   Number _368520_   Housing Location _JB207_

To _Chaplain C. Aguirre_   Date _3/29/05_

Subject (State briefly the problem on which you need assistance) _I did Not KNOW that an Inmate in this facility Needed to prove his religion inorder to practice it! When did this proceedure come into effect???_

_I'm Jewish and you spoke with my uncle (Robert Aknish) to verify this. I'm Jewish and am asking you for the second time permission to obtain the following: Copy of the Torah, Kosher Meals, Yarmulka, prayer oils, and access to order anything else pertaining to the Jewish religion._

_I am NoT going to write ANY organization inorder to persue my religious faith, You can!!!_

_However, in the mean time I would like to be afforded the religious materials in which I've requested. Please promptly respond to this request with an approval or Denial!_

_Thank You   Earl Worthy_

Note: If necessary, you may be interviewed in order to handle your request. Your failure to specifically state your problem may result in no action being taken.

## DO NOT WRITE BELOW THIS LINE

Referred To: _____   By: _____   Date: _____

Disposition / Response _Sir it is your responsibility to attain the documentation to verify your cultural and religious background. I offered to assist you by giving you phone calls and address to people and organizations to get you the documentation, As I spoke to you at our last meeting, if your Uncle could send documentation it would assist you._

_Chaplain C Aguirre_
Staff Member

_4/4/05_
Date

## Appointment to meet with staff

Staff member name _____
Staff member signature _____
Location of meeting _____
Time _____   Date _____
If no appointment is required initial here _____
600905-2148

NOTE: If this area is filled out it will be your place to meet with requesting staff member at the designated time.

ORIGINAL - INMATE   YELLOW - RESPONDENT

**EXHIBIT 5**

# REQUEST FOR SERVICE

Inmate Name *Earl Worthy III*  Number *368520*  Housing Location *JB207*

To (*Chaplain*) *C. Aguirre*  Date *4/18/05*

Subject (State briefly the problem on which you need assistance) *The form (20-102A) "Request to change Religion Preference" does not apply to me. I'm Not changing my Religion, I was born Jewish and have been Jewish since birth! Have you reconsidered, or are you going to continue to deny me access to Jewish Religions materials ???*

*Please respond!*

*Thank You*

*Earl Worthy III*

Note: If necessary, you may be interviewed in order to handle your request. Your failure to specifically state your problem may result in no action being taken.

## DO NOT WRITE BELOW THIS LINE

Referred To: _____  By: _____  Date: _____

Disposition / Response *The form does apply to you. Please see attached forms and complete it. Listed hereon Please send the form to the address listed on it.*

*Chaplain C Aguirre*
Staff Member

*5/2/05*
Date

### Appointment to meet with staff

Staff member name _____
Staff member signature _____
Location of meeting _____
Time _____  Date _____
If no appointment is required initial here _____
600903-2148

NOTE: If this area is filled out it will be your place to meet with requesting staff member at the designated time.

ORIGINAL - INMATE          YELLOW - RESPONDENT

**EXHIBIT 6**

# STATE OF ALASKA

# MEMORANDUM

## Department of Corrections

**Chaplaincy Services**
4500 Diplomacy Drive, Suite 109
Anchorage, Alaska 99508-5918
PH:      (907) 269-7414
FAX:    (907) 269-7420


**DATE:**      4/26/05

**TO:**        Chaplain Aguirre

**FROM:**      Rev. Mike Ensch, Chaplaincy Services Administrator

**SUBJECT:**   Jewish prisoner requests

For clarification purposes, it is standard procedure that when a prisoner claims to be Jewish and asks for specific opportunities to practice the Jewish faith, such as religious ceremonial practices or religious diet, that the Chaplain seek to verify that the prisoner is officially Jewish. Jewish Prisoner Services International provides a free service to prisoners or Chaplains for this verification process. The website is http://www.jewishprisonerservices.org/. Click the link "prisoner assistance" to access the form. This is the one faith group to which a prisoner cannot convert to if they are not already officially registered as being Jewish. This does not preclude any inmate from attending a Jewish service when a Rabbi is present.

**EXHIBIT G**

# REQUEST FOR SERVICE

Inmate Name **Earl Worthy**    Number **368520**    Housing Location **JB207**

To **Chaplain C. Aguirre**    Date **3/29/05**

Subject (State briefly the problem on which you need assistance) I did Not KNOW that an Inmate in this facility Needed to prove his religion inorder to practice it! When did this proceedure come into effect???

I'm Jewish and you spoke with my uncle (Robert Akrish) to verify this. I'm Jewish and am asking you for the second time permission to obtain the following: Copy of the Torah, Kosher Meals, Yarmulka, prayer oils, and access to order anything else pertaining to the Jewish religion.

I am NoT going to write ANY organization inorder to persue my religious faith, you can!!!

However, in the mean time, I would like to be afforded the religious materials in which I've requested. Please promptly respond to this request with an approval or Denial.

Thank You    Earl Worthy

Note: If necessary, you may be interviewed in order to handle your request. Your failure to specifically state your problem may result in no action being taken.

## DO NOT WRITE BELOW THIS LINE

Referred To: _____    By: _____    Date: _____

Disposition / Response Sir it is your responsibility to attain the documentation to verify your customs and religious background. I offered to assist you by giving you phone calls and address to people and organizations to get you the documentation, as I spoke to you at our last meeting; if your uncle could send documentation it would assist you.

Chaplain C Aguirre
Staff Member

4/4/05
Date

## Appointment to meet with staff

Staff member name _____
Staff member signature _____
Location of meeting _____
Time _____    Date _____
If no appointment is required initial here _____

60090 L-2148

NOTE: If this area is filled out it will be your place to meet with requesting staff member at the designated time.

ORIGINAL - INMATE    YELLOW - RESPONDENT

**EXHIBIT H**

# REQUEST FOR SERVICE

Inmate Name _Earl Worthy III_     Number _368520_     Housing Location _JB207_

To (Chaplain) _C. Aguirre_     Date _4/18/05_

Subject (State briefly the problem on which you need assistance) _The form (20-102A)_
_"Request to Change Religion Preference" does not_
_apply to me. I'm Not Changing my Religion, I was_
_born Jewish and have been Jewish since birth. Have_
_you reconsidered, or are you going to continue to deny_
_me access to Jewish Religious materials???_

_Please respond!_

_Thank You_

_Earl Worthy III_

Note: If necessary, you may be interviewed in order to handle your request. Your failure to specifically state your problem may result in no action being taken.

## DO NOT WRITE BELOW THIS LINE

Referred To: _____     By: _____     Date: _____

Disposition / Response _This form does apply to you. Please_
_see attached forms and complete it. blank being_
_Please send the form to the address listed on it._

_Chaplain C Aguirre_
Staff Member

_5/2/05_
Date

## Appointment to meet with staff

Staff member name _____

Staff member signature _____

Location of meeting _____

Time _____ Date _____

If no appointment is required initial here _____

600903-2148

NOTE: If this area is filled out it will be your place to meet
with requesting staff member at the designated time.

ORIGINAL - INMATE          YELLOW - RESPONDENT

**EXHIBIT I**

State of Alaska                                                                                   Department of Corrections

## PRISONER GRIEVANCE

| Print Name | Institution/Module | OBSCIS Number | Log Number |
|---|---|---|---|
| Earl Worthy III | CCA/FCC | 368520 | 05-0253 |

Date of Incident: 4/5/05    Describe the incident and your attempts to handle it informally __ONE__ issue per grievance.

I tried to handle this matter informally (twice)
through "Request for Service" forms sent to Chaplain
C. Aguirre. Both attempts have failed to produce
relief. By right I don't have to verify any
religious belief in order to practice it. I order
this facility to recognize my Jewish Faith and
allow me access to the following; Copy of the
Torah, Kosher meals, a Yarmulka, prayer oils, and any
other materials needed to practice my Jewish religion!
I DEMAND IMMEDIATE APPROVAL!!!

Thank You,

Earl W. III

(Attach additional pages if necessary)

I request the following relief (state outcome you are seeking):

I understand that this grievance must be filed with the grievance coordinator within 30 days of the occurrence or my knowledge of
this incident:

Date: _____    Prisoner's Signature: _____

I acknowledge receipt of this grievance and have issued the Log Number above for reference. Please refer any inquiries about this
grievance to the assigned Log Number:

Date Filed in Compliance: 4/6/05    Grievance Coordinator's Signature: _____

Original :    Prisoner File
Copies:    Prisoner
          Grievance Coordinator
          Grievance/Compliance Administrator

Form 808.03C. Revised 3/98 (All previous Editions Obsolete)

Ex. 7                                                                          600903-4111

**EXHIBIT J**

# GRIEVANCE SCREENING FORM

To:   *368520 / Worthy lii, Earl*                                    05-0253
_____                          _____
**Prisoner's Name/OTIS Number**                              **Log Number**

      *Florence Correctional Center*
_____
**Institution**

Your grievance is being returned to you because: (see the applicable line checked below):

_____   a. The action or decision being grieved is not a grievable issue as specified in section A.2 of DOC Policy 808.03.

_____   b. The grievance is not within the institution's or Department's jurisdiction.

_____   c. The issue grieved was not first addressed informally.

_____   d. This issue was already grieved by the prisoner or by another prisoner and resolved.

_____   e. The grievance is submitted on behalf of another prisoner who is able to file his or her own grievance.

_____   f. This form is not filled out completely.

       Instructions:

_____   g. The grievance was not filed within 30 days.

_____   h. The grievance is grieving an action not yet taken.

_____   i. The grievance contains inappropriate use of obscene or profane words.

  X     j. The grievance is factually incredible or clearly devoid of merit.

_____   k. Specific relief sought not clear.

_____   l. The grievance raises unrelated issues that should be presented in seperate grievances.

_____   m. The grievance is against the Superintendent, but is not for actions taken directly by the Superintendent.

  X     The above noted reasonfor screening your grievance is not self-explanatory.  The following written explanation is
       provided to clarify the above noted screening decision:

       Your not being denied a religion, your being asked to follow policy 20-102a.

April 06, 2005
_____                          _____
**Date**                                                  **Signature of Grievance Coordinator**

**If you have evidence to show that this screening decision is incorrect or improper, you may appeal the decision to
the Superintendent in writing.  The appeal must be attached to your grievance and to this screening form.**

Distribution:     Original to Prisoner Case File

                 Prisoner

                 Grievance Coordinator

Department of Corrections Form #808.03A

Rev. 04/02                                                                      **Page 1 of 1**

EX. 8

**EXHIBIT K**

# REQUEST FOR SERVICE

Inmate Name _Earl Worthy III_  Number _368520_  Housing Location _JB20_

To _Head Warden / Super Intendent_  Date _4/8/05_

Subject (State briefly the problem on which you need assistance) _This is my appeal_
_for the screened Grievance # 05-0253. The Grievance that was screened is factual and_
_also has plenty of merit! I'm requesting you to review_
_Grievance and grant relief_

Note: If necessary, you may be interviewed in order to handle your request. Your failure to specifically state your problem may result in no action being taken.

## DO NOT WRITE BELOW THIS LINE

Referred To: _____  By: _____  Date: _____

Disposition / Response _I concur with the findings of the_
_Grievance Officer, because you are not willing to_
_follow policy. Chaplain training will assist you in_
_this matter by going through the proper channels_
_in making your Renovation Conversion._

_____
Staff Member

_4-13-05_
Date

## Appointment to meet with staff

Staff member name _____

Staff member signature _____

Location of meeting _____

Time _____ Date _____

If no appointment is required initial here _____

600903-2148

NOTE: If this area is filled out it will be your place to meet with requesting staff member at the designated time.

ORIGINAL - INMATE   YELLOW - RESPONDENT

_Ex. 9_

**EXHIBIT L**

OFFICE USE ONLY
CHK#
DATE:
BY:

## CCA-FLORENCE CORRECTIONAL CENTER

### RELEASE OF FUNDS AUTHORIZATION AND APPROVAL

**THIS BOX TO BE COMPLETED BY THE INMATE:**

All information must be neatly printed. Illegible, incomplete, or inaccurate information will be cause for delay or rejection

Inmate I.D. # _508520_                              Amount: _63.90_

Name (Last) _Worthy_          (first) _Earl_          (cell) _LD 203_

Payable to: _United Supply Company_
_231 E. Artesia Blvd_

Address: (street/P.O. box) _P.O. Box 7006_
_Rancho Dominguez, CA    90224-7006_

Association to Inmate: (√ one): [√] vendor   [ ] friend   [ ] family, _____ (relationship)   [ ] Other, _____ (who?)

If friend or Family, are they on your approved visitation list?   [ ] yes   [ ] no

**Reason for Release:** (√) [ ] gift  [ ] pay bill  [ ] copies  [ ] hobby craft order  [ ] Certified Letter

**If hobby craft order:** (√ one)  [ ] In-cell  [ ] Hobby Shop  [ ] On-Unit Hobby Shop

**If ordering:** (√ one): [ ] shoes [ ] Electronics [ ] tapes/CD's [ ] Books/Maga [√] Other, _socks, T-shirt, boxers, Dictionary, Pencils Tablets_   (What?)

I now have? _3_   If more than allowed on authorized property list, before receiving this order I agree to dispose of excess with designated staff by : (√ one) [ ] trash/throw out  [ ] Mail out at my expense  [ ] Donate to inmate library

_[signature]_                                              _9/9/05_
Inmate Signature (required)                               Date

---

To be completed by either Case manager, Chaplain, or Hobby Craft Officer.
After verifying order, briefly list category and number of items, I.e.; beads, radio, glue, shoes, tapes, etc.

_[handwritten]_
_[handwritten]_
comments:

_[signature]_                         [ ] APPROVED  [X] DENIED    _9/9/05_
CASE MANAGER, HOBBY CRAFT OFF. OR CHAPLAIN SIGNATURE                  (Date)
*Why denied _No Religious Preference listed  9/22/05_

_[signature]_                         [ ] APPROVED  [ ] DENIED    _9/13/05_
UNIT MANAGER SIGNATURE                                               (DATE)
*Why denied ___

PROGRAM MGR. OR CHIEF OF SECURITY SIGNATURE   [ ] APPROVED  [ ] DENIED    (DATE)
*Why denied ___

DEPO OF _WORTHY_
EXH NO. _10_   _4/11/06_