IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| EARL WORTHY, III,<br><br>       Plaintiff,<br><br>vs.<br><br>MARC ANTRIM, et al.,<br><br>       Defendants. | Case No. 3:05-cv-00248-TMB<br><br>ORDER DENYING<br>SUMMARY JUDGMENT |

On October 19, 2005, the defendants in this action filed a notice of removal

of Earl Worthy's civil rights case from the Superior Court of the State of Alaska.[1] Mr.

Worthy, a self-represented state prisoner, currently housed in Arizona, alleged that

the defendants denied him his rights under the Free Exercise Clause of the First

Amendment, as well as his rights under Alaska and federal law, including the

Religious Land Use and Institutionalized Persons Act (RULIPA), 42 U.S.C.

§§ 2000cc, et seq.[2]

---

[1]  *See* Docket No. 1.

[2]  *See* Docket No. 2, complaint; Docket No. 30, amended complaint.

The defendants have moved for summary judgment, and Mr. Worthy has responded.[3] In reviewing this motion, the Court must view all evidence and draw all inferences therefrom in the light most favorable to the nonmoving party, here Mr. Worthy.[4] Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[5]

## Facts

The relevant facts in this case, viewed in the light most favorable to Mr. Worthy, are that Mr. Worthy, upon initially being incarcerated, indicated his religious preference as agnostic, or no preference.[6] However, Mr. Worthy was born of a Jewish mother, and has practiced the Jewish religion on and off for his entire life.[7] As a prisoner, he once again began practicing the Jewish religion, to the best of his ability,[8] and has a sincerely held religious belief in the Jewish faith.[9] Mr. Worthy's initial religious preference was maintained in his records when he was transferred

---

[3] *See* Docket Nos. 38, 55, 57.

[4] *See Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

[5] *See* FED. R. CIV. P. 56(c)

[6] *See* Docket No. 57, Deposition Exhibit at 9.

[7] *See* Docket No. 57 at 3; Deposition Exhibit at 4.

[8] Mr. Worthy is apparently only allowed to pray in his cell and to keep a copy of the Torah. *See* Docket No. 38, Exhibit A.

[9] *See* Docket No. 57 at 4; Deposition Exhibit at 3-9; *see also Cutter v. Wilkinson*, 544 U.S. 709, 725 n. 13 (2005).

to the Corrections Corporation of America's Florence Correctional Center, a private prison in Arizona, under a contract with the State of Alaska to house Alaska state prisoners.[10]

When Mr. Worthy indicated that he wished to practice the Jewish religion at FCC, including kosher meals, prayer oils and other religious items,[11] he was told that he would have to complete a "change religious preference" form.[12]   This form requires Mr. Worthy to attach "a written statement from an accredited minister/religious leader who is not an inmate."[13]   Instead, Mr. Worthy provided Defendant Chaplain Aguirre with a writing declaring his sincerely held religious beliefs, and gave Chaplain Aguirre permission to speak with his uncle to verify his religious heritage.[14]  However, Mr. Worthy was told that this was insufficient absent verification of his religious faith from an outside religious organization.[15]

---

[10]   *See* Docket No. 38 at 3 - 4, Exhibit F at 3.

[11]   *See* Docket No. 55 at 2-3, and Exhibit B; Docket No. 56 (affidavit).

[12]   *See, e.g.,* Docket No. 38 at 10, Exhibit L (Mr. Worthy's Sept. 9, 2005, request for release of funds to purchase prayer oils, denied because he had not submitted a change of religion form or verified his Jewish background).

[13]   *See* Docket No. 55 at 2-3, and Exhibit A at 3; Docket No. 56.

[14]   See Docket No. 38, Exhibit F at 4.

[15]   *See id.* at 3 ("[P]laintiff's access to a religious diet, prayer oils, etc., was contingent upon his compliance with the policy requiring him to obtain outside verification of his membership in the Jewish faith from an outside religious organization."); Docket No. 56; Docket No. 57, Deposition Exhibit at 10 ("There's no documentation that my uncle could send.").

Chaplain Aguirre assisted Mr. Worthy in contacting an organization called the "Aleph Institute," in order to help "verify [Worthy's] cultural and religious background as Jewish," and later, "Jewish Prisoners Services International."[16]  After speaking with someone from the Aleph Institute, Mr. Worthy declined to send personal, private information to Aleph, or to Jewish Prisoners Services International, organizations with which he was unfamiliar, in order to prove that he is Jewish by birth.[17]

According to Jewish Prisoners Services International, "[t]raditional religious law defines a 'Jew' as one who is born of a Jewish mother or who has properly been converted to Judaism according to the Halacha.  The Jewish faith group is the one faith group to which a prisoner cannot convert if they are not already officially registered as being Jewish."[18]  Chaplain Aguirre explains that "[t]his is a restriction by the religion itself and not one of prison policy.  Prison policy recognizes and abides by the restriction established by the Jewish religion."[19]  Mr. Worthy, however, did not wish to convert to Judaism, but only wished to be able to practice his religion

---

[16]  Docket No. 38, Exhibits D, and F at 4-5.

[17]  *See id.*, Exhibit F at 4-5.

[18]  *Id.* at 5; Exhibit 6 (April 26, 2005, memorandum from Defendant Chaplain Mike Ensch, Alaska DOC Chaplaincy Services Administrator, to Chaplain Aguirre, instructing that "it is standard procedure that when a prisoner claims to be Jewish and asks for specific opportunities to practice the Jewish faith, such as religious ceremonial practices or religious diet, that the Chaplain seek to verify that the prisoner is officially Jewish. ...  This does not preclude a prisoner from attending a Jewish service when a Rabbi is present.").

[19]  *Id.*

since birth in prison.[20]   Chaplain Aguirre acknowledges that, if he was born of a

Jewish mother, Mr. Worthy is Jewish.[21]   And the defendants do not dispute that Mr.

Worthy's uncle can verify that fact, even though there may be nothing in terms of

documentary evidence which Mr. Worthy or his uncle can provide.[22]

Further, there is no rabbi in the institution in which Mr. Worthy is incarcerated;

only a prison chaplain, Defendant Aguirre.  While members of the Christian faith

have a chaplain at the prison to sign a change of preference form to the Christian

religion, Mr. Worthy must find a religious leader outside of the prison, who apparently

must have documentation proving that Mr. Worthy's mother was Jewish, in order for

him to practice his religion within prison.  Prisoners seeking to convert to other non-

Christian religions would seem to face similar hurdles.

Discussion

Mr. Worthy's claims arise under the Religious Land Use and Institutionalized

Persons Act of 2000.  "Section 3 [of the Religious Land Use and Institutionalized

Persons Act of 2000 (RLUIPA)], provides that '[n]o [state or local] government shall

impose a substantial burden on the religious exercise of a person residing in or

---

[20]   *See id.*, Exhibit H, April 18, 2005 Request for Service ("I'm not changing my religion.  I was born Jewish and have been Jewish since birth.").

[21]   *See id.*

[22]   *See id.*, Exhibit G ("I'm Jewish, and you spoke with my uncle (Robert Akish) to verify this.").

confined to an institution' unless the government shows that the burden furthers 'a compelling governmental interest' and does so by 'the least restrictive means.'"[23] The Supreme Court has explained that "[b]efore enacting § 3, Congress documented, in hearings spanning three years, that 'frivolous or arbitrary' barriers impeded institutionalized persons' religious exercise. "[24]  Further, the Court explained that "[s]ection 3 covers state-run institutions – mental hospitals, prisons, and the like – in which the government exerts a degree of control unparalleled in civilian society and severely disabling to private religious exercise. ...  RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion."[25]

---

[23] *Cutter v. Wilkinson*, 544 U.S. 709, 716 (2005), quoting 42 U.S.C. § 2000cc-1(a)(1) - (2).

[24] *Id.* at 716 (citing 146 Cong. Rec. S7774, S7775 (July 27, 2000) (joint statement of Sen. Hatch and Sen. Kennedy on RLUIPA) ("Whether from indifference, ignorance, bigotry, or lack of resources, some institutions restrict religious liberty in egregious and unnecessary ways."), and n. 5 ("Across the country, Jewish inmates complained that prison officials refused to provide sack lunches, which would enable inmates to break their fasts after nightfall. *Id.,* at 39 (statement of Isaac M. Jaroslawicz, Director of Legal Affairs for the Aleph Institute).").

[25] *Id.* at 720-21, citing § 2000cc1(a), § 1997, and Joint Statements S7775 ("Institutional residents' right to practice their faith is at the mercy of those running the institution.").

Preliminary Issues

Before reaching the merits of Mr. Worthy's claims under RLUIPA, the Court

must first address some preliminary issues raised by defendants.  First, the Court

is unpersuaded by defendants' argument that Mr. Worthy has no standing to bring

a claim under RLUIPA.[26]  As discussed more fully below, Mr. Worthy's right to

practice his religion has been substantially burdened and this injury gives him

standing to sue under RLUIPA.[27]

Mr. Worthy has requested injunctive relief so that he may be allowed to fully

practice his religion, and requests that CCA employees be trained or instructed in

their duties regarding prisoners "with respect to non-Christian faith traditions."[28]

Defendants contend that CCA has no policy or custom pursuant to which they

declined to change Mr. Worthy's religious preference, and therefore they are

---

[26]  *See* Docket No. 38 at 13.

[27]  *See Faith Center Church Evangelistic Ministries v. Glover*, 2007
WL 703599 (9th Cir. March 9, 2007), citing, *inter alia*, *Elrod v. Burns*, 427
US 347, 373 (1976) ("The loss of First Amendment freedoms, for even
minimal periods of time, unquestionably constitutes irreparable injury.");
*Centro Espirita Beneficiente Uniao Vegetal v. Ashcroft*, 389 F.3d 973, 1008
(10th Cir. 2004) (en banc) ("the violation of one's right to the free exercise of
religion necessarily constitutes irreparable harm."); *Bronx Household of
Faith v. Board of Education*, 331 F.3d 342 (2nd Cir. 2003) (plaintiff entitled
to a presumption of irreparable harm for violation of right to practice
religion).  *See also Guru Nanak Sikh Society v. County of Sutter*, 326
F.Supp.2d 1128, 1136 (E.D.Cal. 2003), citing 42 U.S.C. 2000cc-2;
*Kaahumanu v. County of Maui*, 315 F.3d 1215 (9th Cir. 2003) (allowing
RLUIPA suit to go forward against individual county officials).

[28]  Docket No. 24, amended complaint at 10.

entitled to summary judgment on these claims.[29]  However, they also allege that CCA's policy of requiring outside documentation of Mr. Worthy's religion is adhered to for all religions.[30]  It is this very policy that is the subject of this litigation. Therefore, the Court declines to enter summary judgment in favor of CCA on the grounds that CCA has no policy or custom pursuant to which they declined to change the preference form.

The defendants also contend that Mr. "Worthy fails to allege or establish a jurisdictional prerequisite to trigger application of RULIPA to his claim.  Worthy must show that the Alaska Department of Corrections receives federal operating funds for religious programming or other federal funding, or that there is a burden which effects interstate commerce in order to set forth a claim that RLUIPA applies to this action."[31]  But as the United States Supreme Court has stated:  "**Every** State, including Ohio, accepts federal funding for its prisons."[32]  Therefore, the Court finds that the jurisdictional prerequisite has been met.

---

[29]  *See* Docket No. 38 at 13-14.

[30]  *See id.* at 5 ("The procedure for change of religious preference set by CCA Policy 20-102 provides ....").

[31]  Docket No. 38 at 16.

[32]  *Cutter*, 544 U.S. at 716 n. 4 (emphasis added); *see also Coronel v. Paul*, 316 F.Supp.2d 868 (D.Ariz. 2004); Docket No. 55 at 20.

Claims Under the Religious Land Use and Institutionalized Persons Act

Reaching the merits, the defendants contend that the change of preference form is applied uniformly, to all religions.  They argue that, "[t]he statement required by the policy is non-specific and does not require Plaintiff to 'prove his Jewishness.' Given the non-specific nature of the required statement, Plaintiff is not substantially burdened and prevented from exercising his religion.  RLUIPA is thereby not implicated by this incidental burden."[33] But "[s]ection 3 of RLUIPA provides, in relevant part, that '[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a **rule of general applicability**," *unless* the government establishes that the burden furthers 'a compelling governmental interest,' *and* does so by 'the least restrictive means.'"[34] The Court of Appeals for the Ninth Circuit reminds us that "[b]y its terms, RLUIPA is to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs."[35]  In effect, RLULIPA replaces the "legitimate penological interest" test articulated in *Turner v. Safley*,[36]

---

[33]  *See* Docket No. 57 (Defendants' reply) at 7.

[34]  *Warsoldier v. Woodfor*d, 418 F.3d 989, 994 (9th Cir. 2005) (bold added), following *Cutter*.

[35]  *Id*. at 995, citing 42 U.S.C. § 2000cc-3(g).

[36]  *Turner v. Safley*, 482 U.S. 78 (1987).

with "compelling government interest"[37] and "least restrictive means" tests.[38]

Mr. Worthy has shown that the defendants have imposed a substantial burden on him by requiring him to go to an outside source and provide documentation of his Jewish heritage in order to practice his religion while incarcerated.  The institution will not accept professions of his sincerely held beliefs, the fact that he reads the Torah on a regular basis and prays, or the word of his uncle that he was born to a Jewish mother.  In fact, Mr. Worthy has stated that he knows of no documentation he could provide showing that he is of Jewish heritage. Not being one who has converted to Judaism, he would not need to be on a register, nor would his mother, unless she became Jewish through conversion rather than through being born of a Jewish mother herself.

Furthermore, under established case law, Mr. Worthy is entitled to First Amendment protection for the exercise of his sincerely held religious beliefs regardless of whether any particular organized religious denomination agrees with him.[39]

---

[37]  *See Warsoldier*, 418 F.3d at 994.

[38]  *Id.*; *see also Jesus Christ Prison Ministry v. California Dept. of Corrections*, 456 F.Supp. 1188, 1203 (E.D.Cal. 2006).

[39]  *See Frazee v. Illinois Dept. of Employment Sec.*, 489 U.S. 829, 834 (1989) ("[W]e reject the notion that to claim the protection of the Free Exercise Clause, one must be responding to the commands of a particular religious organization. Here, Frazee's refusal was based on a sincerely held religious belief. Under our cases, he was entitled to invoke First Amendment protection."); *Ford v. McGinnis*, 352 F.3d 582, 590 (2nd Cir.

The defendants explain the governmental interest the policy was intended to further as follows:

> [The] form was established to balance the institution's need for safety and security with the inmates' need to practice their religion. ... This policy furthers institutional security by preventing gang affiliations, inmate violence, and security issues involved in mass inmate movements.[40]

However, the defendants have not established any compelling reason for preventing Mr. Worthy from obtaining the items he requested in order to practice his religion. They have not stated that there is any indication that Mr. Worthy is, in fact, using Judaism as a subterfuge for gang affiliation or drug use, or in order to otherwise engage in illicit activities.[41]   In fact, the only evidence in the record indicates that there are very few Jewish inmates at the facility, and that Mr. Worthy wanted to have Jewish services with another Jewish inmate, but that inmate is no longer there.[42]

Further, even if the defendants had established a compelling government interest, the defendants never address whether the stated interest is furthered by

---

2003) ("the question whether Jackson's beliefs are entitled to Free Exercise protection turns on whether they are 'sincerely held,' not on the 'ecclesiastical question' whether he is in fact a Jew under Judaic law.") (quoting *Jackson v. Mann*, 196 F.3d 316, 321 (2nd Cir. 1999), and following *Frazee*).

[40]  Docket No. 57 at 4.

[41]  *See* Docket No. 38 at 17-18; Docket No. 57 at 4.

[42]  *See id.,* Exhibit A at 4.

11

the least restrictive means of ascertaining whether Mr. Worthy should be allowed

to practice Judaism.[43]   Since Mr. Worthy has established that a substantial burden

on his right to practice his religion has been imposed and the government has failed

to establish that the burden furthers a compelling government interest by the least

restrictive means, the government's summary judgment motion is hereby DENIED.

First Amendment

The defendants state that "[f]or the reasons Worthy's RLUIPA claims fail, so

too does his First Amendment claim."[44]   The Court also declines to grant summary

judgment on Mr. Worthy's First Amendment claim, not only because Mr. Worthy's

RLUIPA claims have merit, but because there is a distinct and material difference

between evaluation of claims under RLUIPA and the First Amendment.

RLUIPA was meant to replace the "legitimate penological interest" test

articulated in *Turner v. Safely*, with the "compelling government interest" and "least

---

[43]   *See Warsoldier v. Woodford*, 418 F.3d 989, 998 (9th Cir. 2005) ("Assuming that CDC has met its evidentiary burden, and that it has established that the grooming policy serves a compelling governmental interest, CDC must still establish that the grooming policy is the least restrictive alternative to achieve that interest. ... [CDC's stated policy, that to] meet the penological interests furthered by the grooming standard, the prison must enforce the grooming policies upon all inmates regardless of their religious convictions ... does nothing to explain ... whether it has ever considered a less restrictive approach.").

[44]   Docket No. 38 at 17.

restrictive means" tests.[45]  Before  RLUIPA, the Supreme Court in *Turner* held that

"when a prison regulation impinges on inmates' constitutional rights, the regulation

is valid if it is reasonably related to legitimate penological interests."[46]  It was "out

of deference to prison administrators [that] courts apply a form of rational basis

review in prisoners' rights cases, asking 'whether a prison regulation that burdens

fundamental rights is "reasonably related" to legitimate penological objectives, or

whether it represents an "exaggerated response" to those concerns.'"[47]  Viewing all

evidence and drawing all inferences therefrom in the light most favorable to Mr.

Worthy,[48] the Court finds that there is a genuine issue of material fact as to whether

the policy was reasonably related to legitimate penological interests, and thus,

summary judgment in favor of the defendants on First Amendment grounds must

be denied.

Defendants Antrim, Ensch and Luna

In the defendants' motion for summary judgment, it is contended that

defendants Antrim, Ensch, and Luna did not violate RLUIPA, because they did not

---

[45]  *Warsoldier*, 418 F.3d at 994, following *Cutter*; *see also Jesus Christ Prison Ministry v. California Dept. of Corrections*, 456 F.Supp. 1188, 1203 (E.D.Cal. 2006).

[46]  *Turner*, 482 U.S. at 89.

[47]  *Gilmore v. People of the State of California*, 220 F.3d 987, 992 n. 5 (9th Cir. 2000) (quoting *Turner*, 482 U.S. at 87).

[48]  *See Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000); *see also* FED. R. CIV. P. 56(c).

make decisions regarding Mr. Worthy's request to practice his religion, and they are

therefore entitled to summary judgment.[49]  However, the defendants argue that "[i]n

an effort to assure Worthy's request was acted upon appropriately, Chaplain

Aguirre contacted the State of Alaska Department of Corrections Chaplaincy

Services to confirm the procedure to designate the Jewish faith when a prisoner

claims to be Jewish, and was given information regarding Jewish Prisoners

Services International."[50]   Defendant Ensch, as DOC Chaplaincy Services

Administrator, told Chaplain Aguirre that "it is standard procedure that when a

prisoner claims to be Jewish and asks for specific opportunities to practice the

Jewish faith, such as religious ceremonial practices or religious diet, that the

Chaplain seek to verify that the prisoner is officially Jewish. ...  This does not

preclude a prisoner from attending a Jewish service when a Rabbi is present."[51]

Thus, Defendant Ensch was directly involved in the decision which prevented Mr.

Worthy from practicing his religion without the verification he contests.

Likewise, Defendant Luna was the final decision maker, according to Mr.

Worthy.[52]  And although not mentioned by name, Mr. Worthy directly counters

---

[49]  *See* Docket No. 38 at 12-13.

[50]  Docket No. 38 at 9, Exhibit F.

[51]  Docket No. 38, Exhibit 6 (April 26, 2005, memorandum from
Defendant Chaplain Mike Ensch, Alaska DOC Chaplaincy Services
Administrator, to Chaplain Aguirre); *see also* Docket No. 55 at 16, and
Docket No. 56 (Worthy affidavit).

[52]  *See* Docket No. 55 at 16-19; Docket No. 56.

See https://example.com

defendants' argument on the issue of respondeat superior regarding CCA and Defendant Antrim in his opposition to the motion for summary judgment.[53]  Under RLUIPA, a claim for injunctive relief may be made on a theory of respondeat superior.  Those in charge are the ones who must effectuate any order by the Court to change a practice at the institution, thus they are properly parties to the case.[54]

<u>Injunctive Relief</u>

Mr. Worthy has shown that there is a likelihood of success on the merits in this case.[55]  The fact that he is being denied the right to practice his religion unless he presents documentation proving his Jewish heritage shows irreparable harm.[56]

---

[53]  *See id.* at 18-19, responding to Docket No. 38 at 12-13.

[54]  *See, e.g., Morris v. Newland*, 2007 WL 707525 (E.D.Cal. March 6, 2007) ("Although not well-pleaded, plaintiff apparently seeks to allege a violation of his rights as a practicing Muslim under RLUIPA by the CDCR policy of allowing female guards to view male inmates nude in showers as well as in various states of undress in and near their cells in state prisons. Certainly, the CDCR Secretary would be in a position to effect the order of the court wherever plaintiff is incarcerated in the state, should one be fashioned by the court."); *see also Agrawal v. Briley*, 2006 WL 3523750 (N.D.Ill. Dec. 6, 2006) ("RLUIPA appears implicitly to authorize *respondeat superior* liability.") (citations omitted).

[55]  *See Warsoldier*, 418 F.3d at 1002.

[56]  *See Community House, Inc. v. City of Boise,* 468 F.3d 1118 (9th Cir. 2006) ("The fact that the plaintiffs have raised 'serious First Amendment questions compels a finding that there exists "the potential for irreparable injury, or that at the very least the balance of hardships tips sharply in [the plaintiffs'] favor."'") (citations omitted); *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 303 (D.C. Cir. 2006) (the plaintiff has alleged that, but for the defendants' conduct, he would likely "engage in the constitutionally protected expressive conduct."); *O Centro*

15

However, Mr. Worthy points out in his opposition to the motion for summary judgment that he has not requested preliminary injunctive relief.[57]  And his request for prospective injunctive relief is not being decided at this point.[58]

<u>State Religious Constitutional Claims</u>

Because a state cannot provide lesser protections under its constitution than provided by the federal constitution, and the Court has determined that the defendants are not entitled to summary judgment on Mr. Worthy's First Amendment

---

*Espirita Beneficiente Uniao Vegetal v. Ashcroft*, 389 F.3d 973, 1008 (10th Cir. 2004) (en banc) ("the violation of one's right to the free exercise of religion necessarily constitutes irreparable harm."); *Bronx Household of Faith v. Board of Education*, 331 F.3d 342 (2nd Cir. 2003) (plaintiff entitled to a presumption of irreparable harm for violation of right to practice religion).

[57]  *See* Docket No. 55 at 23.

[58]  At trial, it will be determined whether Mr. Worthy is entitled to Kosher meals, "prayer oils and other requested religious materials," and whether the CCA employees should be "trained as to their duties and obligations with respect to non-Christian faith traditions," as Mr. Worthy as requested in his request for injunctive relief.  *See* Docket No. 24 at 10.  *See also* 18 U.S.C. 3626(a)(1)(A)  ("Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief."); *Clement v. California Dept. of Corrections*, 364 F.3d 1148, 1152 (9th Cir. 2004) ("Because the injunction is no broader than the constitutional violation, the district court properly entered a statewide injunction.").

claims, the defendants' motion for summary judgment on the basis of the state constitution must fail.[59]

<u>State Rehabilitation Claim and Breach of Contract Claim</u>

Mr. Worthy's state law claims are too far removed from his claims under RLUIPA and the First Amendment to the Constitution, and should be brought in state court. For instance, Mr. Worthy claims that the defendants have violated his rights under the Alaska Constitution to reformation and rehabilitation.[60] There is no comparable right under the United States Constitution.[61] Nor is Mr. Worthy's contract claim, to the effect that he has a "right to performance with regard to the contract between the State of Alaska, Department of Corrections and the Corrections Corporation of America"[62] similar to his federal civil rights claims. As the Ninth Circuit explained, "district courts do not overstep Article III limits when they decline jurisdiction of state-law claims on discretionary grounds without

---

[59]  *See Vernon v. City of Los Angeles*, 27 F.3d 1385 (9th Cir. 1994); *see also Buckles v. King County*, 191 F.3d 1127, 1138 (9th Cir. 1999). Alaska has little case law concerning the right to freedom of religion under its constitution.

[60]  *See* Docket No. 24, amended complaint at 8.

[61]  *See Hoptowitz v. Ray*, 682 F.2d 1237, 1254-55 (9th Cir. 1982).

[62]  *See* Docket No. 24, amended complaint at 8.

determining whether those claims fall within their pendent jurisdiction."[63]  Those

claims will, therefore, be dismissed without prejudice.[64]

   **IT IS HEREBY ORDERED:**

1.   The defendants' motion for summary judgment is DENIED.

2.   Mr. Worthy's claim that he is entitled to rehabilitation under state law, and his

   breach of contract claim are DISMISSED without prejudice to bringing suit in

   an appropriate state court.

3.   Mr. Worthy's motion for a report on the status of this case is now moot; the

   Court will issue an order regarding the scheduling of this case for trial in due

   course.

3.   Mr. Worthy may renew his motion to be transported to appear in person at

   trial, once the trial is scheduled.[65]


   DATED this 17th day of July, 2007,  at Anchorage, Alaska.


                                   /s/TIMOTHY  M.  BURGESS
                                   United States District Judge

---

   [63]  *Wilbur v. Locke*, 423 F.3d 1105, 1106 (9th Cir. 2005), citing *Steel
Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94-95 (1998), and
*Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584-85 (1999).

   [64]  *See, e.g., Smelt v. County of Orange*, 447 F.3d 673, 681 (9th Cir.
2006) ("We simply 'cannot predict with any confidence how [the California
Supreme Court] would decide' the state constitutional questions.")
(citations omitted).

   [65]  *See* Docket Nos. 43, 53.